**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**PENNZOIL-QUAKER**
**STATE COMPANY,**

        Plaintiff,        **CIVIL ACTION NO. 09-CV-13650**

  vs.

                           **DISTRICT JUDGE STEPHEN J. MURPHY, III**

**USA LUBE, INC., et al.,**       **MAGISTRATE JUDGE MONA K. MAJZOUB**

        **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

**I.**     **RECOMMENDATION:** Plaintiff's Request for Damages in its Motion for Default Judgment (docket no. 22) should be GRANTED in part and DENIED in part.

**II.**     **REPORT:**

    **A.**     **Facts and Procedural History**

Plaintiff Pennzoil-Quaker State Company (Plaintiff or PQS) filed this Complaint on September 15, 2009. (Docket no. 1). Plaintiff filed a Motion for Default Judgment pursuant to Fed. R. Civ. P. 55(b)(2) on December 30, 2009. (Docket no. 17). On June 21, 2010 the District Court granted Plaintiff's Motion for Default Judgment. (Docket no. 22). This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the issue of damages. (Docket 24). Plaintiff filed its Statement of Evidence of Damages Awarded Pursuant To Default Judgment on January 25, 2011. (Docket no. 26). The Court dispenses with oral argument pursuant to E.D. Mich. LR 7.1(f) and the matter is ready for decision. (Docket no. 25).

The Court will not repeat herein the procedural history, facts and claims as set forth in the Court's June 21, 2010 Default Judgment Against USA Lube, Inc., Waterford's Lube Inc., and Ali A. Karnib[1]. (Docket no. 22).

**B.     Standard**

The Court entered its Default Judgment against Defendants pursuant to Fed. R. Civ. P. 55(b)(2). Fed. R. Civ. P. 55(b)(2) provides that in entering a default judgment, the "court may conduct hearings or make referrals– preserving any federal statutory right to a jury trial– when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).  Pursuant to Fed. R. Civ. P. 54(c) "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

**C.     Analysis**

As of the date of this Report, none of the Defendants has appeared in this matter.  When a defendant is in default, he is bound on the issue of liability as to the factual allegations in the Complaint but "still has the opportunity to respond to the issue of damages." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 111 (6th Cir.1995).  "Fed.R.Civ.P. 55 does not require a presentation of evidence as a prerequisite to the entry of a default judgment, although it empowers the court to conduct such hearings as it deems necessary and proper to enable it to enter judgment or carry it into

---

[1] The Court's June 21, 2010 Default Judgment addresses Defendants USA Lube, Inc., Waterford's Lube Inc., and Ali A. Karnib. (Docket no. 22). Two other Defendants, Karnab & Mourtada, Inc. and Fawzi Mourtada, were dismissed prior to the Default and are not party to the Default or the issue of damages. (Docket no. 19)

effect." *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837 (E.D. Mich. 2006) (citing Wright, Miller & Kane, Federal Practice and Procedure, Civil 3rd § 2688).

The Court has outlined four areas of damages, attorneys fees and costs which Plaintiff may recover by its Default Judgment. (Docket no. 22). Each of the damages, fees and costs is set forth below.

**1.     Treble Damages Pursuant to the Lanham Act, 15 U.S.C. § 1117(a) and (b)**

The Court ordered that "PQS may recover all damages it has sustained as a result of Defendants' activities and that said damages be trebled pursuant to 1117(a) and 1117(b)" of the Lanham Act, 15 U.S.C. § 1051 et seq. (Docket no. 22 p. 8 ¶ f). The Court also ordered that "PQS may recover its costs of this action and prejudgment and post-judgment interest." (Docket no. 22 p. 9 ¶ j). The damages amount sought by Plaintiff in the Evidence of Damages statement does not differ in kind from the damages set forth in Plaintiff's Complaint. (Docket no. 1 ¶¶ 44, 65, and Prayer for relief at p. 15 ¶ d, e).

Defendants provided no response to the Court's June 21, 2010 Default Judgment, despite the order that Defendants obtain an accounting which would be used to determined profits resulting from illegal activities and ill gotten gains, which would be paid to Plaintiff. Plaintiff in its Evidence of Damages statement provided an estimate of Defendants' oil sales for the past two years "based on the size and location of Defendants' oil change facility." (Docket no. 26 ¶ 7). The Court has considered Plaintiff's estimate, which was made by Angela Porter, Plaintiff's employee since 1989, who has since January 2000 held the position of Distributor Channel Manager, which handles issues "concerning PQS's product distributors, including volume, pricing, produce credits, financials, distributor training, market needs and product promotions." (Docket no. 26 ¶ 8, 26-3 A. Porter Decl.

¶ 4). Plaintiff included Ms. Porter's supporting declaration. (Docket no. 26-3).

As provided by 15 U.S.C. § 1117(a), "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost of deduction claimed." 15 U.S.C. § 1117(a). Plaintiff does not have access to Defendant's sales records yet Plaintiff has provided a basis for calculating sales of oil changes for Defendant's location and size. Plaintiff calculates that a two-bay facility such as Defendant's "typically performs twenty-four (24) oil changes per day." Ms Porter testifies that based on her visit to the USA Lube facility and her experience, she believes Defendants charge customers a minimum of $20.00 for each oil change. (Docket no. 26-3 ¶ 9). Ms Porter calculates that twenty-four oil changes per day at $20.00, performed six days a week for fifty-two weeks a year totals $149,760. (Docket no. 26-3 ¶ 9). Plaintiff argues that Defendant's have not been an authorized PQS installer since at least October 2008. (Docket no. 26 ¶ 9, 26-3 ¶ 7). Ms. Porter calculates two years of PQS lost profits based on an estimate of two years of operation with the counterfeit and/or violating marks, for a total estimated lost profit to PQS of $299,500. (Docket no. 26-3 ¶ 10).

In its Evidence of Damages Award pleading, Plaintiff states that although treble damages are appropriate pursuant to 15 U.S.C. section 1117(a) or (b), "an award of gross sales of $299,500 for [Defendants'] infringement from 2008 to the present is sufficient without enhancement, unless Defendants are able to prove offsets, in which case PQS believes that trebling of profits would be justified." (Docket no. 26 ¶ 12). Defendants have not responded in this action and have not shown any basis to provide an offset to Plaintiff's sales numbers.

As Plaintiff correctly points out, statutory damages are available pursuant to 15 U.S.C. section 1117(c) as an alternative to actual damages. The Court ordered that "PQS may recover

statutory damages pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117(c) which provides for awards up to $2,000,000 per violation." (Docket no. 22 p. 8 ¶ h). In this instance, the Court should find that Plaintiff has shown a sound basis for an award of actual damages in the amount of $299,500.

**2.      Reasonable Attorneys Fees pursuant to Lanham Act, 15 U.S.C. § 1117(a)**

The Court ordered that "PQS may recover its reasonable attorney fees pursuant to 15 U.S.C. §1117(a)." (Docket no. 22, p. 9 ¶ i). Plaintiff submitted the declaration of attorney Jill M. Wheaton setting forth the total amount of costs and attorneys fees in this matter. (Docket no. 26-5). Plaintiff seeks a total award of fees and costs in the amount of $47,940.47. (Docket no. 26 ¶ 19). Plaintiff has not, however, submitted any invoices or otherwise set forth the number of hours spent by each attorney and the paralegal and the corresponding hourly rate. Instead, Plaintiff alleges that the "average hourly rate charged to PQS for all Locke Lord Bissell & Liddell LLP and Dykema Gossett PLLC attorneys in this case was approximately $306." Plaintiff alleges that this hourly rate is "consistent with prevailing market rates for trademark litigation both nationally and in Michigan" and provides an excerpt from a Report of the Economic Survey from the American Intellectual Property Law Association (2009) showing that the average hourly billing rate for associates in private firms was $311.

"[T]he lodestar approach is the proper method for determining the amount of reasonable attorneys' fees." *Ametex Fabrics Inc. v. Custom Interiors and Supply Co.*, 162 F.3d 1161 at *3 (6th Cir. 1998) (citing *Building Service Local 47 v. Grandview Raceway*, 46 F.3d 1392, 1402 (6th Cir.1995)). "The lodestar approach entails multiplying "the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Id.* The Court then considers other factors, supporting

documentation of the hours worked and the "prevailing market rate for the work." *Id.* "A plaintiff must, however, provide the court with 'evidence supporting the hours worked and the rates claimed.' This requirement can be satisfied by the affidavits of plaintiff's attorneys as to their fees and copies of billing invoices describing the activity involved, the amount of time expended on it, and the total amount of time spent on each activity." *Id.* at *2 (citations omitted).

  The problem with Plaintiff's statement of attorneys fees and expenses is twofold.  First, Plaintiff has not produced enough information for the Court to engage in the most basic of reviews as to whether the attorneys fees are reasonable.  Plaintiff has cited general and unsubstantiated privilege, confidentiality and proprietary concerns regarding its invoices and the most basic information necessary to determine whether fees and expenses are reasonable.  (Docket no. 26-5 n.1).  Plaintiff then invites this Court to request the information for in camera review or to be filed under seal.  The Court should not have to make a special request for this information.  It is clear that Plaintiff bears the burden of showing its fees and expenses are reasonable and submitting supporting documentation of the same.

  Second, following Plaintiff's logic, and with no showing that the total amount Plaintiff claims, $47, 940.47, includes expenses other than attorneys fees, the attorneys worked approximately 156 hours on this matter ($47,940.47 divided by Plaintiff's proposed $306 per hour average).  This is an unreasonably high number of hours for a case in which the Defendants never showed up, no discovery was sought or produced and there were only about four pleadings that substantively amounted to something other than administrative filings: the Complaint (docket no. 1), the Patent or Trademark filing report (docket nos. 2, 23), the Motion for Default Judgment (docket no. 17) and the statement of Evidence of Damages (docket no. 26).

Plaintiff has not met its burden of showing that its attorneys fees and expenses totaling $47,940.47 are reasonable and has provided the Court with no other basis for determining the reasonable amount of time spent on the requirements of this action. Therefore the request should be denied.

### D. Conclusion

For the reasons set forth herein the Court should enter an order granting the monetary damages in the amount of $299,500.00 with pre- and post-judgment interest as set forth herein and denying attorneys fees and expenses. The Court should also correct on the docket the June 21, 2010 text entry that administratively terminates the three Defendants addressed by the Court's June 21, 2010 Default Judgment Order (docket no. 22). The June 21, 2010 Order does not provide for the termination of these three Defendants.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: June 6, 2011                   s/ Mona K. Majzoub
                                        MONA K. MAJZOUB
                                        UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record and Defendants USA Lube, Inc., Waterford's Lube, Inc. and Ali A. Karnib at the addresses on record on this date.

Dated: June 6, 2011                   s/ Lisa C. Bartlett
                                        Case Manager